UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **JESSE JAMES CASTON**<br>    **LA. DOC # 101028**<br>**VS.** | **CIVIL ACTION NO. 09-1119**<br><br>**SECTION P**<br><br>**JUDGE ROBERT G. JAMES** |
| **BURL CAIN, WARDEN** | **MAG. JUDGE KAREN L. HAYES** |

REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus, 28 U.S.C. § 2254, filed on June 18, 2009[1] by *pro se* petitioner Jesse James Caston. Petitioner is an inmate in the custody of Louisiana's Department of Public Safety and Corrections. He is incarcerated at the Louisiana State Penitentiary, Angola. This matter has been referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court. For reasons set forth below, it is recommended that the petition be **DENIED**.

BACKGROUND

In 2001 the East Carroll Parish Grand Jury indicted petitioner on charges of first degree murder, second degree murder, possession of a firearm by a convicted felon and multiple counts of attempted first degree murder on police officers. In May 2003 venue was transferred to Madison Parish. On August 2, 2004, petitioner filed a motion to suppress inculpatory statements. [Doc. # 21, pp.285–295.]. Judge John D. Crigler denied a portion of petitioner's motions, and

---

[1] Doc. 1, p. 15. Petitioner signed his pleading on June 17, 2009 and deposited it in the prison mailing system on June 18, 2009. Pursuant to the prison "mailbox rule" that is the earliest date the pleading may be considered filed. See *Houston v. Lack*, 487 U.S. 266, 270-71, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988).

continued the hearing as to the remainder. *See* Mins. Aug. 11, 2004 [doc. # 21 at 35–35A].

On August 16, 2004, petitioner entered a *Crosby* guilty plea to one count of second degree murder, reserving his right to appeal the denial of the motion to suppress.[2] On the same date petitioner was sentenced to life imprisonment. [Doc. # 3, pp. 49-78.] He appealed in accordance with the plea agreement and on September 28, 2005, the Second Circuit held that petitioner's confessions were freely and voluntarily given and the conviction was affirmed. *State of Louisiana v. Jesse James Caston*, 40,054 (La. App. 2 Cir. 9/28/2005), 912 So.2d 413. Petitioner did not seek further direct review in the Louisiana Supreme Court. [Doc. # 10-2, p. 8.]

On September 26, 2006, petitioner, through counsel, filed an application for post-conviction relief in the Sixth Judicial District Court. Thereafter, counsel was permitted to withdraw and petitioner filed supplemental pro se claims. [Doc. # 10-2, p. 8.] On April 17, 2007, the District Court summarily denied relief and provided reasons for judgment. [Doc. # 3, pp. 80-85.]

On May 14, 2007, petitioner filed an application for writs in the Second Circuit Court of Appeals. [Doc. 10-2, p. 8.][3] On unspecified dates, his application was denied, and petitioner sought reconsideration.[4] On July 9, 2007, the Second Circuit granted reconsideration and denied writs. *State of Louisiana v. Jesse James Caston*, No. 42651-KH (La. App. 2 Cir. 7/9/2007). [Doc. 3, p. 86.]

In pleadings post-marked August 10, 2007, petitioner applied for further review in the

---

[2] See *State v. Crosby*, 338 So.2d 584 (La. 1976) which allows a criminal defendant to plead guilty with the reservation of the defendant's right to appeal a particular issue.

[3] Petitioner did not provide a copy of the writ application filed in the Second Circuit Court of Appeals.

[4] Petitioner did not provide a copy of the Second Circuit's writ denial nor did he provide a copy of his motion for reconsideration.

Louisiana Supreme Court; his writ application was received and filed on August 30, 2007, and assigned Docket Number 2007-KH-1764. [Doc. # 3, p. 87.] On May 30, 2008, petitioner's writ application was summarily denied. *State of Louisiana ex rel. Jesse James Caston v. State of Louisiana*, 2007-1764 (La. 5/30/2008), 983 So.2d 892. On June 10, 2008, petitioner applied for rehearing in the Louisiana Supreme Court. [Doc. # 3, pp. 88-94.] On June 5, 2009, reconsideration was denied. *Jesse James Caston v. State of Louisiana*, 2007-1764 (La. 6/5/2009), 9 So.3d 863.

Petitioner's federal *habeas corpus* petition was deposited with prison authorities and thus timely filed on June 18, 2009. [Doc. # 1, p. 15.] Petitioner filed his amended petition on September 24, 2009. [Doc. # 12.] He raises the following claims for relief:

(1) "Petitioner did not voluntarily nor intelligently waive his rights and enter a plea of guilty where same was obtained via coercion by state actors, and but for such tactic petitioner would not have plead guilty. The plea was entered in violation of petitioner's rights under the 5th, 6th, and 14th Amendments." [Doc. # 12, p. I.]

(2) "Petitioner did not voluntarily nor intelligently enter his plea of guilty which was obtained due to ineffective assistance of counsel in violation of petitioner's rights under the 6th and 14th Amendments." [Doc. # 12, p. I.]

## LAW AND ANALYSIS

### I. Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA) of 1966, 28 U.S.C. § 2254, governs habeas corpus relief. The standard of review is set forth in 28 U.S.C. § 2254(d):

> (d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000). "The 'contrary to' requirement refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* at 740. Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal *habeas* courts presume such determinations to be correct; however, the petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e).

## II. Petitioner's Claims

### A. Inadmissible Guilty Plea

A plea of guilty may not be the result of threats, force or coercion. *Brady v. U.S.*, 397 U.S. 742 (1970). A plea must be entered knowingly and voluntarily. *Boykin v. Alabama*, 395 U.S. 238, 243-44 (1992). To prove involuntariness, the defendant must show that the fear of the possible consequences of not pleading guilty destroyed his ability to balance the risks and benefits of going to trial. *Brady v. U.S.*, 397 U.S. at 750-51.

4

Here, petitioner claims that his plea resulted from coercion on behalf of the prosecutor. Around February 2004, petitioner alleges, Attorney James Caldwell, District Attorney for the Sixth Judicial District of Louisiana, placed "illegal restrictions" on the petitioner, including depriving petitioner of mail, phone, and visits pending petitioner's trial. [Doc. # 12 at p. 9.] Petitioner further alleges that the restrictions prohibited him from assisting in his own defense. *Id.* The restrictions continued despite petitioner's complaints to the Louisiana State Penitentiary, *see* Ex. 2 to doc. # 12, and to Judge Crigler, *see* Ex. 3 to doc. # 12. As a result of these restrictions, petitioner claims that he was "pushed to the point...that he just wanted to get in over with [*sic*]." *Id.* In other words, petitioner alleges the restrictions placed upon him constituted coercion, and that the only reason he pled guilty was to have the restrictions lifted. *Id.*

Petitioner's argument is tenuous at best. It is incredible to believe that a defendant would plead guilty to shooting another human being, with a firearm, with the specific intent to kill, just so he could have his telephone privileges restored. It is incredible to believe that a defendant would accept a sentence of life in prison at hard labor, without the possibility of early release or parole, in order to have full visitation rights restored.[5] The petitioner, however, would like the court to believe that the only reason he pled guilty to second degree murder was to have the "illegal restrictions" placed upon him lifted. *See* Hr'g Tr. 8/16/2004, 21:2–12; 24:2–30 [doc. # 3, pp. 69–72].

---

[5] Petitioner misleads the court when he claims that he had no visitation rights. The undersigned notes the Judgment of the Sixth Judicial District: "[P]etitioner alleges he was denied due process by the District Attorney and the Department of Corrections when petitioner's visitation privileges and telephone calls were discontinued thereby impairing [petitioner] from adequately preparing for trial or receiving effective assistance of counsel. This allegation is misleading at best. Testimony by the petitioner at a pre-trial hearing was that his "contact" visits had been stopped, i.e., he was required to visit through a screen. The record reflects non-contact visits during the this time with counsel and with family members although it is unclear whether all visits were interrupted for a time. The record also reveals numerous telephone calls involving petitioner of which tapes were made and which became a major issue at a pre-trial hearing."
J. Apr. 17, 2007, at 2 [doc. # 3, at 81].

In light of petitioner's history of run-ins with the criminal justice system;[6] in light of the fact that petitioner spent several months as a fugitive;[7] in light of the fact that petitioner was charged with the attempted first degree murder of two Lake Providence, Louisiana police officers;[8] and in light of the fact that the District Attorney's Office had evidence that petitioner, or those at his behest, had been intimidating witnesses in his case;[9] the conditions imposed on him while incarcerated pending trial were clearly reasonable under the circumstances. There is no evidence that any restrictions placed upon petitioner pending his trial were done so with the goal of coercing petitioner into pleading guilty.

Further, there is no evidence that petitioner's plea was involuntary or unintelligent. Rather, petitioner indicated to Judge Crigler that he understood his constitutional rights better than most defendants:

> Q: Do you understand that by entering into this plea agreement that you are waiving your right to a jury trial?
> A: I do. Yes, sir.
> \*\*\*
> Q: When you plead guilty, there's no trial, and therefore there is no questioning of witnesses on direct or cross-examination. There's no trial. There's no witnesses that actually testify. Do you understand that you're waiving that right or giving up that right?

---

[6] Petitioner was previously convicted of manslaughter in March 1989; *see State v. Caston*, 40,054 (La. App. 2 Cir. 9/28/2005) 912 So.2d 413.

[7] The crimes for which petitioner was charged occurred on April 10, 2000; petitioner was arrested in December 2000. Petitioner was indicted on January 11, 2001. *See* 912 So.2d 413; Indictment [doc. # 21, at p. 44].

[8] *See* Indictment [doc. # 21, at p. 44].

[9] When questioned by Attorney Smith regarding a motion to continue, D.A. Caldwell stated: "I can tell you that...Mr. Caston is one of the high security risks we've ever had in this district. And he was making telephone calls from the institution and he was intimidating witnesses from the institution. He was making self-serving statements to some of the witnesses and was making an obvious attempt prior to us going, getting ready in preparation for our April 19th trial date, he was doing the same thing. He was calling witnesses and suggesting what they say in such a way as exhibited on those statements which you have been provided with." Hr'g Tr. Aug. 11, 2004, at 167:1–17 [doc. # 21, at 719.].

> A: Yes, sir.
> Q: Are you doing that of your own free will?
> A: I am.
> Q:...Are you familiar with your right to compel people to come to court by court order known as subpoenas?
> A: Yes, sir, I am.
> ***
> Q: Okay.  Tell me in your own words what it means when I say you have a right to remain silent at trial or you have a privilege against self-incrimination.
> A: There's a Fifth Amendment that says you don't have to incriminate yourself, you don't have to take the stand.  But you also have the right to take the stand and defend yourself.  I understand it perfectly.
> ***
> Q: Okay.  Of course, one important part of pleading guilty is doing it voluntarily of your own free will.  Are you doing this all of your own free will?
> A: Yes, sir.
> Q: And you think this is in your best interest?
> A: Yes, sir.
> Q: You've discussed this with your attorney, Mr. Smith?
> A: Yes, sir, I have.
> Q: All right.  And you feel comfortable with the advice you've gotten and the help you've gotten with Mr. Smith?
> A: Yes, sir, I do.
> Q: Okay.  Has anybody threatened you in any way to get you to plead guilty?  In other words, you can't plead guilty as a result of being threatened or forced or coerced.  Is this guilty plea without any of that?
> A: Yes, sir, it is.
> Q: Okay.  So no one's threatened you, coerced you, or forced you to plead guilty?
> A: No, sir.
> ***
> Q: Okay.  And, Mr. Caston, based on my experience in these hearings, you seen to have a great deal of knowledge about the criminal law.  Do you do a lot of studying of the criminal law?
> A: I read all the time; yes, sir.
> Hr'g Tr. Aug. 16, 2004 at 5:6–12:10 [doc. # 3 at pp. 53–60].

Petitioner further stated that he was familiar with the effects of a *Crosby* appeal (*Id.* at 9:20–10:9); that he understood the charge he was pleading to, second degree murder (*Id.* at 16:11–16); that he read law books, newspapers, magazines, and novels (*Id.* at 17:3–22); that he had no trouble comprehending what he read (*Id.* at 17:23–27); and that he was familiar with boykinization (*Id.* at 18:28–19:1).  Attorney Leroy Smith, Jr., petitioner's court-appointed

counsel, stated that petitioner was "aware of what he was doing," "aware of the law," and "aware of his options." *Id.* at 19:2–19:11.

The record is absent of any indication that the petitioner was coerced into pleading guilty. Indeed, when inquired by the judge as to whether anyone had coerced petitioner into pleading, petitioner answered in the negative. The petitioner further indicated to the judge that he was well aware of his constitutional rights, and that he had an above-average understanding of the law and the charges against him. "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. U.S.*, 397 U.S. at 748. Here, the record supports the trial court's findings that petitioner had sufficient awareness of the charge he was pleading to and the consequences thereof, and that his plea was voluntary. Petitioner has presented no evidence, much less clear and convincing evidence, that the trial court's factual findings were incorrect. Petitioner's petition based on the claim that his plea was the result of coercion should therefore be **DENIED.**

## B. Ineffective Assistance of Counsel

### 1. Standard

Ineffective assistance of counsel claims may be considered under 28 U.S.C. § 2254. *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996). To prevail on a claim of ineffective assistance of counsel, a defendant must show both (1) that his counsel's actions fell below an objective standard of reasonableness and (2) that the ineffectiveness of counsel prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). If the defendant does not make a sufficient showing as to one prong of the test, the other prong need not be considered. *Tucker v. Johnson*, 115 F.3d 276, 281 (5th Cir. 1997). The prongs of the test also need not be analyzed in

any particular order. *Goodwin v. Johnson*, 132 F.3d 162, 172 n.6 (5th Cir. 1997).

To prove deficient performance, the defendant must demonstrate that counsel's actions "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687. There is a strong presumption that counsel performed adequately and exercised reasonable professional judgment. *Virgil v. Dretke*, 446 F.3d 598, 608 (5th Cir. 2006). Furthermore, "a conscious and informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Id.*

To prove prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome" and is less than a preponderance of the evidence. *Id.* at 693-94.

### 2. Petitioner's Claims

Petitioner alleges Mr. Smith's inadequacy as an attorney rendered his plea of guilty involuntary and ineffective.[10] Petitioner claims that Mr. Smith was unprepared for trial, despite the fact that a "jury pool was already waiting to be chosen for trial to begin that day;" that Mr. Smith had not subpoenaed any witnesses on behalf of petitioner; and that "unless [petitioner] pled guilty to second degree murder...he would go to trial with no witnesses and be convicted on all counts, and, that the illegal restrictions would only be lifted if [petitioner] pled guilty." [Doc. # 12, p. 13.]

---

[10] Petitioner alleges that Judge Crigler, District Attorney Caldwell, and his own attorney Mr. Smith somehow concocted a plan that would ultimately result in a guilty plea from petitioner. "[Petitioner] had reason to feel the Judge, District Attorney, and his Attorney all were conspiring to deny him a fair trial and thus [Petitioner] pled guilty..." Doc. # 12 at p. 5.

9

Contrary to petitioner's assertions, the record illustrates Mr. Smith as a competent attorney who zealously defended petitioner. On the date he entered his plea, as described *supra*, petitioner himself stated to the judge that he was comfortable with the advice and assistance he had received from Mr. Smith. With regard to the "jury pool," petitioner again misconstrues the facts; Judge Crigler advised petitioner that it was his constitutional right to have a jury trial, and that should he chose to continue, a jury pool was waiting in the courthouse. Hr'g Tr. Aug. 16, 2004 at 4:28–5:2 [doc. # 3 at pp. 52–53]. Petitioner advised the judge that he understood. *Id.* Finally, petitioner advised the judge that he understood the process of subpoenaing witnesses in his defense; Mr. Smith further advised the judge that subpoenas were to be issued that same day, should petitioner have chosen to proceed to trial. *Id.* at 6:20–7:30 [doc. # 3 at pp. 54–55]. Thus, there is no reason to believe that any witnesses would not have been available at trial had Petitioner chosen to proceed with trial.

As petitioner's attorney for more than three years, Mr. Smith was certainly diligent in his representation of petitioner, filing numerous appeals and motions before petitioner's guilty plea on August 16, 2004. Petitioner brings forth no evidence or factual allegations to support a claim that Mr. Smith's performance either fell below an objective standard of reasonableness, or that petitioner was prejudiced as a result. Petitioner's petition on the basis of a claim of inadequate assistance of counsel should therefore be **DENIED.**

## CONCLUSION

For the reasons stated above, it is recommended that the petition for writ of habeas corpus [doc. # 12] under 28 U.S.C. § 2254 be **DENIED**. Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this

Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACHING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, September 20, 2010.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE